JOURNAL ENTRY and OPINION
 I.
Appellant Case Western Reserve University (CWRU) brings this appeal from the trial court's ruling, which affirmed the decision made by the Ohio Bureau of Employment Service that CWRU terminated appellee David Andress without just cause and that Andress was therefore eligible for unemployment compensation.
 II. A.
CWRU employed Andress from June 1997 until his termination in November 2000 in the school's Material Science and Engineering Department, under the supervision of Professor David Matthiesen. On October 17, 2000, Andress was placed on an investigatory suspension after several live bullets were found in [his] work area.
By letter dated November 17, 2000, CWRU informed Andress that his employment was terminated for three reasons: (1) his keeping of live bullets in his work area, which the school stated endangered life or property, constituted disruptive behavior, poor judgment and the possession of a weapon at his workplace; (2) his failure to disclose prior criminal convictions on his original employment applications; and (3) criminal convictions committed by Andress subsequent to his hire, which were discovered by CWRU through the criminal background check that was undertaken as part of the above-mentioned investigation.
The failure-to-disclose rationale is based on Andress's failure to list convictions for marijuana and aggravating menacing on his first application for (temporary) employment. Andress claims that he thought the marijuana conviction had been expunged from his record and that the menacing charge had been dismissed. He further claims that he learned soon after this application that the marijuana conviction had not been expunged. About a month later, on his second application for (permanent) employment, Andress left the prior-criminal-conviction question blank until asked about it by Lynn Peterson, a CWRU employment specialist. Andress claims that he explained to her the situation, that he then filled in the marijuana conviction and that she accepted his explanation and offered him the job.
 B.
After his termination, Andress filed a claim with the Ohio Department of Job and Family Services, arguing that his termination was made without just cause. This claim was rejected because [a] review of the facts establishes that the discharge was based on claimant's act, omission, or course of conduct. There was sufficient fault on the claimant's part that an ordinary person would find the discharge justifiable. Andress appealed this decision for redetermination.
On January 17, 2001, the director's redetermination upheld the initial decision. Andress filed an appeal from this redetermination to the Unemployment Compensation Review Commission, in front of hearing officer Jeffrey M. Hersh.
Hersh made, among others, the following findings of fact:
 Claimant first applied for temporary work at CWRU in June of 1997. On his application claimant indicated that he had not been convicted of any crimes. Although he had a minor marijuana conviction in 1991, at the time he believed it had been expunged.
 On July 21, 1997, claimant completed a second application. This was for permanent employment. He left the question about crimes blank. He had checked with his attorney in the meantime and learned that the expungement had not gone through. Claimant discussed this with Ms. Peterson.
He added the marijuana conviction to his application.
Claimant was hired.
 Shortly after he was hired, claimant put up a display in his office of several large caliber bullets. An additional bullet was given to him by Mr. Whittaker [a student friendly with Andress] soon thereafter and it too was prominently displayed. The bullets were on top on a speaker mounted behind claimant's head at eye level of every one that entered claimant's office.
 As a result of a dispute that claimant had with a student, an investigation was begun. A criminal background check was run. The check showed the marijuana conviction and, in error, an aggravating menacing charge. In fact, the menacing charge had been dismissed. In addition, Professor Matthiesen, after years of going into claimant's office suddenly claimed to first notice the bullets. Claimant was dismissed.
Unemployment Compensation Review Board Decision at 2. Hersh concluded that Andress's failure to disclose his prior convictions was excusable since, on the second application, he corrected his earlier omission, which was based on his mistaken belief that the marijuana conviction had been expunged from his record. Further, Hersh found that the menacing charge had been dropped and that therefore Andress did not need to disclose it.
Hersh did find that Andress made an error in judgment by bringing the live bullets into his work place, but that the bullets had been prominently displayed for at least three years. Hersh did not believe Matthiesen's testimony that he had never noticed the bullets until October of 2000 and stated that Matthiesen should have dealt with the problem when if first arose.
Hersh ultimately reversed the Director's redetermination, thereby finding that Andress was dismissed without just cause and allowing Andress's unemployment compensation claim.
CWRU appealed this decision to the Cuyahoga County Common Pleas Court, which affirmed the decision of the Ohio Unemployment Compensation Review Commission, holding that the Commission's decision was neither unreasonable, unlawful nor against the manifest weight of the evidence.
CWRU appeals the trial court's decision.
 III. ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED WHEN IT AFFIRMED THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S FINDING THAT APPELLEE, DAVID ANDRESS, WAS NOT TERMINATED FOR JUST CAUSE PURSUANT TO R.C. 4141.29
AND WAS THEREFORE ENTITLED TO UNEMPLOYMENT COMPENSATION BENEFITS, EVEN THOUGH HE BROUGHT LIVE BULLETS INTO THE WORK PLACE, OMITTED CRIMINAL CONVICTIONS ON TWO DIFFERENT APPLICATIONS FOR EMPLOYMENT, AND HAD A PATTERN OF REPEATED CRIMINAL CONVICTIONS.
 A.
Under this assignment of error, CWRU brings three issues: (1) whether an employee who was terminated from employment because he brought live bullets into the workplace was terminated from employment for just cause and therefore was not entitled to unemployment benefits; (2) whether an employee who was terminated from employment because he failed to disclose criminal convictions on his employment application was terminated from employment for just cause and therefore was not entitled to unemployment benefits; and (3) whether an employee who has terminated from employment because he had a pattern of repeated criminal convictions was terminated from employment for just cause and therefore was not entitled to unemployment benefits.
CWRU argues that it had just cause to terminate Andress's employment because he brought live bullets into the workplace, because he failed to reveal previous crimes on his employment applications, and because he had a pattern of repeated criminal convictions subsequent to his hire.
 B. 1. Standard of Review
An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, Plakas Mannos v. Admr., Ohio Bur. of Emp. Serv., 73 Ohio St.3d 694, 1995-Ohio-206,653 N.E.2d 1207, paragraph one of the syllabus. Further, all reviewing courts have the same obligation: to determine whether the board's decision is supported by the evidence in the record, without substituting its factual findings or determinations regarding the credibility of witnesses for those of the board. Id. The board's role as factfinder is intact; a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Id., 73 Ohio St.3d at 697.
 2. Just Cause
The relevant Ohio statute provides that no individual may be paid benefits when that individual has been discharged for just cause in connection with the individual's work. R.C. 4141.29(D)(2)(a) (eff. 9-21-2000) (emphasis added).
In order to have just cause for discharge, pursuant to R.C. 4141.29, there must be some fault on the part of the employee involved, in the absence of an overwhelming contractual provision. Sellers v. Unemployment Compensation Bd. of Review (1981), 1 Ohio App.3d 161, 440 N.E.2d 550, paragraph two of the syllabus.
In keeping with the intent and purpose of the Ohio Unemployment Compensation Act, `fault' must be further determined from the employee's perspective. Ohio Turnpike Comm'n. v. Conrad (Dec. 1, 1994), 8th Dist. No. 66405 at *14, citing Morris v. Ohio Bur. of Unemployment Comp. Bd. of Review (1993), 90 Ohio App.3d 295, 299; Sellers, supra.
 C. 1.
Here, CWRU makes no argument that Andress's termination was in connection with the individual's work[.] R.C. 4141.29(D)(2)(a). CWRU merely alleges that the keeping of the bullets amounted to possession of a weapon; that he was endangering life or property[;] and that his actions constituted disruptive behavior and poor judgment.
 2.
While Human Resources Disciplinary Action Policy Number III-4 does consider endangering the life or property and possession of a weapon at the workplace to be Acts of Misconduct, for which termination is a possible consequence, that policy does NOT mention either disruptive behavior or poor judgment. Nor does CWRU, in any case, show that the display of bullets did endanger anything or that they constituted the possession of a weapon. Indeed, Hersh did not believe Matthiesen's testimony, that he did not see the bullets until October of 2000. The board found that the problem, if any, should have been dealt with when it first arose.
 3.
As to Andress's failure to disclose prior criminal convictions, Hersh found that Andress had simply made a mistake in not disclosing his marijuana conviction and that he corrected it. Further, Andress testified that he had a conversation with Peterson when he was filling out his second application. Andress testified that he explained why he had not disclosed the marijuana conviction on the first application and that Peterson accepted his explanation. Peterson does not recall this conversation, but Hersh found Andress's testimony credible. We must accept his findings of fact.[1] Tzangas, supra.
 4.
Finally, CWRU argues that the post-hire convictions that were discovered through the background check provided just cause in that Andress had violated CWRU's Human Resources Position Requirements Policy II-5. CWRU argues that this policy, which is included in the employee handbook, provides grounds for the university to deny employment or to dismiss from employment those whose criminal background show a pattern of repeated criminal violations[.]Policy Number II-5, however, states that a criminal background check is to be done before an offer of employment is extended. Further, according to this policy, CWRU's response to a pattern of repeated criminal violations is that no offer will be made. (Emphasis added.) The policy simply does not provide grounds for dismissal upon the discovery of a pattern of criminal violations.
Finally, absent a contractual provision allowing CWRU to terminate Andress's employment for post-hire criminal convictions, CWRU cannot show it had just cause to fire him. Sellers, supra.
 D.
Therefore, because there is some competent, credible evidence to support the board's finding and because its conclusion was not unlawful, unreasonable or against the manifest weight of the evidence, we affirm the decision of the board finding that CWRU terminated Andress's employment without just cause and that he is therefore eligible for unemployment compensation.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN JUDGE TIMOTHY E. McMONAGLE, A.J., and DIANE KARPINSKI, J., CONCUR.
[1] Although this panel may well have resolved the disputed facts in a different manner, we may not substitute our judgment for that of the factfinder.